JEROME BECKWITH v. SAMUEL W. WEBBER ET AL.

*Certificate of deposit — Fraudulent origin — Good-faith indorser— Subrogation.*

A bank issued a certificate of deposit, in part payment for a forged draft, to a person giving his name as O. M. Thurston, who indorsed it to the order of A. Conover (he assuming both names), and, in order to have it cashed at another bank, after indorsing it as A. Conover, secured the indorsement of a third party, who acted in good faith and without any knowledge of the fraudulent inception of the paper, as did the bank cashing it. The certificate was protested and the indorser duly notified, who paid it with knowledge of the original fraud, and thereupon brought suit against the bank issuing the certificate, and it is *held*:

*a*—The certificate was issued to an *actual* person, who gave his name as Thurston, and in the transaction, for all purposes, is known, and can be legally held, under that name, as well as any other he may have or may have assumed.

*b*—The certificate is not a forgery or issued to a fictitious person, and the plaintiff had the right to make the indorsement he did, being ignorant of the fraudulent inception of the paper, and when he made it he assumed the liability of an indorser of commercial paper; and when the certificate was protested that liability was fixed, which was to the bank cashing the paper, and it became his duty to at once pay

it, and, on such payment, the law subrogated him to all of the rights of said bank against the drawers and prior indorsers of the certificate, which he had a right to at once enforce.

c—The *status* of the plaintiff when he made the indorsement, and the equities which *then* controlled and protected his rights, continued until he was fully re-imbursed for the payment so made, unaffected by any after-acquired knowledge concerning the fraud originally practiced.

Error to Ionia. (Smith, J.) Argued October 30, 1889. Decided December 28, 1889.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Davis & Nichols,* for appellants, contended:

1. The certificate of deposit is virtually a promissory note, payable on demand, and the law applicable to promissory notes payable on demand applies; citing *Cate v. Patterson,* 25 Mich. 191; *Palmer v. Palmer,* 36 Id. 491; *Birch v. Fisher,* 51 Id. 36; *Bank v. Merrill,* 2 Hill, 295: *Pardee v. Fish,* 60 N. Y. 265.

2. The plaintiff, to be protected from the equities existing between the original parties, must be a *bona fide* holder for value before maturity; citing *Hunter v. Parsons,* 22 Mich. 96; *Helmer v. Krolick,* 36 Id. 371; *Church v. Clapp,* 47 Id. 257.

3. As between the original parties, the circumstances of the issue of the certificate can be explained, and the fraud in its inception would release the makers from liability; citing *Gibbs v. Linabury,* 22 Mich. 479; *Anderson v. Walter,* 34 Id. 113; *Smith v. VanBlarcom,* 45 Id. 371; *Soper v. Peck,* 51 Id. 563; *Bank v. Deal,* 55 Id. 592.

4. A *bona fide* holder is one who has paid value before maturity, and received the paper in the usual course of trade, without notice; citing 1 Edw. Bills, § 18; *Coddington v. Bay,* 20 Johns. 637; *Stalker v. M'Donald,* 6 Hill, 93; *Turner v. Treadway,* 53 N. Y. 650; and this is the question presented in this case as to the plaintiff.

5. The indorser of a certificate of deposit in the ordinary form assumes the same liability as the indorser of a promissory note; citing *Cate v. Patterson,* 25 Mich. 191; and he admits that previous indorsements were duly made, and warrants the title and genuineness of the paper he transfers; citing *Fish v. Bank,*

42 Mich. 203; *Herrick v. Whitney*, 15 Johns. 240; *Shaver v. Ehle*, 16 Id. 201.

6. The legal definition of an accommodation indorser is one who puts his name there without any consideration, and with the intention of lending his credit to the accommodated party; citing 1 Pars. Notes & B. 184.

7. The indorser of a note, when obliged to take it up at maturity, does not acquire any greater rights than he had originally; citing *Webster v. Machine Co.*, 54 Conn. 394.

8. When the instrument at its inception is founded in illegality, fraud, or felony, the holder is compelled to show that he gave value for it; citing *Aldrich v. Warren*, 16 Me. 465; *Perrin v. Noyes*, 39 Id. 384; *Munroe v. Cooper*, 5 Pick. 412; *Bank v. Bank*, 10 Cush. 488.

9. By payment the plaintiff became the holder of the certificate, but with full knowledge of its fraudulent origin. He holds, however, not as transferee of the party to whom he made payment, but of the party *for* whom he paid (A. Conover), and possesses his rights, and no other; citing 2 Pars. Notes & B. 455; *Ellsworth v. Brewer*, 11 Pick. 316; *Merrils v. Swift*, 18 Conn. 257; *Emerson v. Cutts*, 12 Mass. 77; *Kingman v. Hotaling*, 25 Wend. 423; *Sater v. Hendershott*, Morris (Iowa), 118; and, if he could recover at all, it would relate back to that time, and, if under any view he could be protected by reason of his good-faith indorsement, it would be only to the extent of the consideration paid by him; citing *Huff v. Wagner*, 63 Barb. 215; *Harger v. Wilson*, Id. 237; and as he paid nothing at the time of indorsement his recovery is limited to such payment.

10. Defendants agreed to pay O. M. Thurston, or to his order, the amount of the certificate, when it was returned properly indorsed; and until this contract was complied with no liability accrued, and plaintiff has no right of action in his own name; citing *Robinson v. Wilkinson*, 38 Mich. 299; *Redmond v. Stansbury*, 24 Id. 445; and it is conceded that one or the other of the names, " O. M. Thurston," " A. Conover," is fictitious.

11. Our statute provides that notes made payable to a fictitious person shall, if negotiated by the maker, have the same effect, and be of the same validity, as against the maker and all persons having knowledge of the facts, as if payable to bearer; citing How. Stat. § 1580; the intent of the Legislature being to take cases out of the common-law rule holding such instruments to be void *ab initio;* citing *Bennett v. Farnell*, 1 Camp. 130; *Minet v. Gibson*, 3 Term R. 481; to obviate a difficulty in

the way of the holder in making title and suing on a note which had been indorsed by the person to whose order it was made payable; citing *Plets v. Johnson,* 3 Hill, 112; *Bank v. Lang,* 1 Bosw. 202.

12. If the name "O. M. Thurston" was fictitious, the makers had no knowledge of the fact, and if the name "A. Conover" was false, the plaintiff is in no better condition, and the instrument is void. The signing of a fictitious name to an instrument with intent to defraud is forgery; citing *People v. Marion,* 29 Mich. 39; but we conclude that the true name was "Thurston," from the fact that he had reason, after the perpetration of the fraud upon defendants, to change his name. Then having, by his genuine indorsement, made the instrument payable to the order of a fictitious person with intent to defraud,—the indorsement of Conover being a distinct contract (*Church v. Edson,* 39 Mich. 113), through which plaintiff obtained all the rights he has in the premises upon which to base a recovery, —does it not follow that the case is not within the statute, and that no liability rests upon the makers, because the proper indorsement to make them liable has not been made, and the holders of this dishonored paper cannot acquire any title through a forged instrument? citing *Graves v. Bank,* 17 N. Y. 205; *Bank v. Bank,* 1 Hill, 287.

13. The plaintiff was an accommodation indorser without consideration, and when such an indorser has paid the demand he is entitled to recover the amount, with interest and costs; citing *Griffith v. Reed,* 21 Wend. 502; and, in the absence of any expressed stipulation, the law will imply an understanding on the part of the drawer or maker to indemnify the acceptor or indorser. On this *implied* obligation, or for money paid, an action may be had, but not on the note or bill itself; citing *Young v. Hockley,* 3 Wils. 346; *Suydam v. Westfall,* 4 Hill, 211; *Wing v. Terry,* 5 Id. 160; and the note or bill is only used as an item of evidence; citing *Bonney v. Seely,* 2 Wend. 481; and the right of recovery only accrues after the accommodation maker or indorser has paid the demand; citing 1 Edw. Bills, §§ 522, 524.

*Lemuel & William Clute,* for plaintiff, contended for the doctrine stated in the opinion.

SHERWOOD, C. J. The declaration in this case is on the common counts in *assumpsit,* with notice that plaint-

iff would offer in evidence on the trial a certificate of deposit of which the following is a copy:

" $150.00. BANKING-HOUSE of WEBBER, JUST & CO.
"MUIR, MICHIGAN, May 16, 1888.

"O. M. Thurston has deposited in this bank one hundred and fifty dollars, payable to the order of himself, in current funds, on return of this certificate properly indorsed. ' C. W. FRENCH, Cashier."

On the back of the certificate are the following indorsements:

"Pay A. Conover or order. O. M. THURSTON.
"A. CONOVER.
"Protested for non-payment June 25, 1888."

Defendants pleaded the general issue, with notice that they would show that the certificate of deposit declared upon was obtained by fraud, deceit, misrepresentation, and false pretenses on the part of the payee, called "Thurston" in the certificate; that said O. M. Thurston, upon May 16, A. D. 1888, claimed that he had a New York draft for $350, upon which representation defendants paid said Thurston the sum of $200 in currency, and issued the said certificate of deposit; that the draft was a forgery, and of no value; that Thurston knew this; that the indorsement on the back of the certificate was a forged, false, and counterfeited indorsement; and that the plaintiff is not a *bona fide* holder of the certificate, without notice; and that plaintiff received no consideration for his indorsement, and simply indorsed as an accommodation, and for identification.

The facts are all stipulated in the case. The cause was tried before the Hon. Vernon H. Smith, circuit judge, in the Ionia circuit, without a jury, who found the facts as stipulated by the parties, and, upon the facts thus found, held, as a question of law, that the plaintiff was entitled to recover the amount of the certificate of deposit, it

being $159.87. Defendants all join in the writ of error, assigning as reason for reversal that, upon the facts stipulated and found by the court, judgment should have been given for the defendants instead of the plaintiff.

The facts as found, in substance, are as follows:

That the plaintiff is a hotel-keeper at Oxford, Oakland county; that on June 14, 1888, the payee named in the certificate came to plaintiff's hotel, gave his name as A. Conover, and represented that he dealt in stock; that he was there two or three days, and then left; that he returned June 25, and was there at the hotel one day; that plaintiff never saw the man Conover until said June 14, and never knew anything about him or his antecedents, and made no inquiry relating thereto, except from the man himself.

That the defendants are a banking firm, and have done business in Muir, Michigan, for the last 10 years, and that Charles W. French is their cashier, and had been for more than a year prior to May 16.

That A. Conover and O. M. Thurston were one and the same person; that Thurston was at Muir, in January, 1888, and while there became acquainted with cashier French; that he then had two drafts—one on Toledo and the other on New York—cashed by French at the bank, and which were all right, and regularly paid; that on May 16, thereafter Thurston presented another draft to French, at the bank. This was as follows:

"W. H. MARTIN & CO., BANKERS.
"No. 297. ALBANY, N. Y., May 9, 1888.
"Pay to the order of Charles Adams ($350) three hundred and fifty dollars. W. H. MARTIN & Co.
"To the Fifth National Bank, New York."

Upon the back of the draft is indorsed,—

"Pay O. M. Thurston or order.
"CHAS. ADAMS.
"O. M. THURSTON."

Mr. French took this draft, paid Thurston $200 in money, and gave him the certificate of deposit in suit for the balance.

The stipulation further states that the draft was a forgery; that there was no such firm in Albany as "W. H. Martin & Co." at the date of the draft, and that no such firm ever had any funds with the Fifth National Bank of New York, and that the indorsements upon the draft are all in the handwriting of O. M. Thurston. The draft is marked "Exhibit A," and the certificate is marked "Exhibit B," in the record.

That on June 25, A. Conover presented the certificate to the Oxford Savings Bank, and was told he would have to be identified and obtain an indorser, and thereupon Conover obtained the indorsement of the plaintiff upon the certificate as an accommodation, and for identification, but plaintiff did not go to the bank; that Conover went alone, and obtained the money; that the bank paid it in good faith, and without any knowledge of the fraud of Conover; that the indorsements on the back of Exhibit A, "Pay O. M. Thurston or order. CHARLES ADAMS. O. M. THURSTON," and on Exhibit B, "Pay A. Conover or order. O. M. THURSTON. A. CONOVER," are all in the same handwriting, viz., that of O. M. Thurston.

"That said plaintiff was never a *bona fide* holder of said certificate of deposit, for a valuable consideration, before presentation and maturity, but holds said certificate by virtue of the liability arising from said indorsement, having paid the said Oxford Savings Bank the amount paid by it thereon to A. Conover or O. M. Thurston, and taken the certificate from said bank after the said certificate of deposit was duly protested for non-payment against him, the said plaintiff.

"That the said draft, Exhibit A, was duly protested for non-payment, and returned to the said defendants, and is now in their hands, and that the said certificate, Exhibit B, was also duly protested upon presentation, and

was returned, and came into the possession of the said plaintiff.

"That when the plaintiff indorsed the certificate of deposit on which this suit is brought he acted in good faith, and without knowledge or notice of its fraudulent origin, and when he paid the bank at Oxford, and took the certificate in question, he did so because of his liability as indorser, but when he took the certificate from the bank at Oxford, that is, the Oxford Savings Bank, he knew of the fraudulent origin of the paper, and he would not have taken it up, had it not been for his indorsement; and that the plaintiff now holds said certificate of deposit, having obtained it by payment to the said Oxford Savings Bank, after protest of the same for non-payment, the amount of said certificate."

From this statement of facts found it appears that the certificate of deposit which plaintiff now holds was duly issued in the month of May, 1888, to a person giving his name as O. M. Thurston, and was by him negotiated after the indorsement of plaintiff was obtained. The certificate was issued to an actual person, who gave his name as Thurston, and in this transaction, for all purposes, is known, and can be legally held, under that name, as well as any other he may have or assumed, so that it is not the case of a certificate drawn, payable to a fictitious person, although the name mentioned may not be the true one; neither is the certificate a forgery, but is a genuine certificate. Such, then, is the character of the certificate. If such is the case, and the plaintiff made his indorsement upon it unconditionally, without any knowledge of the fraudulent origin of the indebtedness for which it was given, the plaintiff had the right to make the indorsement he did, and when he made it he assumed the liability of an indorser of commercial paper.

When the plaintiff indorsed the certificate in good faith and the Oxford Bank, willing to take the paper with the plaintiff's name upon it as indorser, cashed the certificate in good faith, and both acted without

knowledge or notice that anything was wrong in the matter, then the plaintiff's promise was given and his liability incurred; and when the certificate was protested for non-payment the extent of that liability was fixed. It needed no action of any court or tribunal to determine it. That liability was to the Oxford Savings Bank, and it was not only the plaintiff's right, but it was his duty, at once, after the certificate was protested, to pay the Oxford Bank the amount then unpaid; and the law then subrogated him to all the rights the bank had against the drawers and the prior indorsers of the certificate; and he, being a *bona fide* holder, became entitled at once to proceed against the defendants and indorsers to re-imburse himself to the amount he had been obliged to pay the Oxford Bank. The record shows that the plaintiff has done precisely this, and nothing more; and the judgment should be affirmed.

The *status* of plaintiff when he made his indorsement, and the equities which then controlled and protected his rights, continued until he was fully re-imbursed in the amount he was obliged to pay from the makers and prior indorsers of the certificate; and it could make no difference with his legal or equitable rights what he may have heard or ascertained in regard to fraud in the original consideration after his liability had been once established.

I see no necessity for citing authorities in support of these views; but, if any were necessary, those referred to by the counsel are quite sufficient. The principles governing the case are elementary.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. LONG, J., did not sit.